UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OWEN HARTY, Individually,

    Plaintiff,                                              CASE NO. 0:09-cv-61412-JAL

v.

SRA /PALM TRAILS PLAZA, LLC,
A Foreign Limited Liability Company,

    Defendant.
_____/

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Defendant is liable for the ADA violations existing at its place of public accommodation. Defendant is liable for these violations because it owns a public accommodation containing ADA defined barriers to access that deny Plaintiff use and enjoyment of its facility.

    Therefore, since there is no genuine issue of material fact as to the Defendant's liability, the Plaintiff is entitled to summary judgment as a matter of law.

    Defendant's facility was improperly designed and constructed in the year 2000. Although Defendant has performed no ADA survey and never fixed any defects, it received actual notice of ADA violations in 2006. In response to this lawsuit, Defendant made several narrow quick fixes, but these fixes are inadequate and the facilty remains non-compliant. Moreover, despite actual knowledge of ADA violations, Defendant has failed to adhere to policies and procedures to ensure

1

or maintain compliance. Because no genuine factual dispute exists, Plaintiff is entitled to summary judgment as a matter of law.

## I.  STATUTORY BACKGROUND OF ADA LEGISLATION

Congress enacted the Americans with Disabilities Act ("ADA") in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. §12101(a)(2); *See also* 42 U.S.C. § 12101(a)(3) ("[Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services").

Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42. U.S.C. § 12101(a)(5). After thoroughly investigating the problem, Congress concluded that there was a "compelling need...[for a] clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.Code Cong. & Admin.News 1990, pt. 2, pp. 303, 332.

In the ADA, Congress provided that broad mandate. *See* 42 U.S.C. § 12101(b). In fact, one of the Act's "most impressive strengths" has been identified as its "comprehensive character."

Hearings on S. 933 before the Senate Committee on Labor and Human Resources and the Subcommittee on the Handicapped, 101st Cong., 1st Sess., 197 (1989) (statement of Attorney General Thornburgh). Accordingly the Act has been described as "a milestone on the path to a more decent, tolerant, progressive society." *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 375 (2001) (KENNEDY, J., concurring).

To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III).

The provisions of Title III are at issue in this case. Title III of the ADA prescribes, as a "[g]eneral rule":

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), operates a place of public accommodation."

42 U.S.C. § 12182(a).

The phrase "public accommodation" is defined in terms of twelve (12) extensive categories[1]

---

[1]. "(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
"(B) a restaurant, bar, or other establishment serving food or drink;
"(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
"(D) an auditorium, convention center, lecture hall, or other place of public gathering;
"(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
"(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
"(G) a terminal, depot, or other station used for specified public transportation;
"(H) a museum, library, gallery, or other place of display or collection; "(I) a park, zoo, amusement park, or other place of recreation;
"(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of

which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the non-disabled. Sen. Rep. No. 101-116, at 59;  H.R. No. 101-485, pt. 2, at 100, U.S. Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-383.

## II.  CAUSES OF ACTION FOR ARCHITECTURAL BARRIERS IN PUBLIC ACCOMMODATIONS

Congress considered the importance of ensuring that private businesses and the ADA were compatible. *See* Hearing on S. 933 Before Committee on Small Business, 101st Legis., 2d Reg. Sess. (1990). To strike a balance between the interests of the disabled and the legitimate concerns of private business, the ADA delayed its effective date to "permit adequate time for businesses to become acquainted with the ADA's requirements and to take the necessary steps to achieve compliance." *Statement on Signing the Americans with Disabilities Act of 1990* at 2 (July 26, 1990).

Further, the ADA was crafted to "give the business community the flexibility to meet the requirements of the Act without incurring undue costs." *Id.* at 1-2. The modest requirement of "readily achievable" barrier removal on existing facilities "allows for minimal investment with a potential return of profit from use of disabled patrons, often more than justifying the small expense." S. Rep. No. 101-116, at 66 (1989).

---

education;
"(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment;  and
"(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." § 12181(7) .

If a place of public accommodation fails to remove architectural barriers, the enforcement provisions of the ADA provides a private right of action. 42 U.S.C. § 12188(a)(1). A private action under Title III is available to any person who is "being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination . . . ."[2] 42 U.S.C. § 12188(a)(1). The ADA does not require "a person with a disability to engage in a futile gesture if such [a] person has actual notice that a person or organization . . . does not intend to comply" with the ADA. *Id.*

Title III incorporates the remedies and procedures of Title II of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12188(a)(1). The court may order injunctive relief which includes an order to make a facility "readily accessible." 42 U.S.C. § 12188(a)(2). Or, where appropriate, injunctive relief may include "requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods . . . ." *Id.*

"There is a private right of action for enforcement of [the ADA] regulations to require [private] entities to implement nondiscriminatory standards and proceed to make necessary modifications." <u>Schonfeld v. City of Carlsbad,</u> 978 F. Supp. 1329 (S.D.Cal. 1997) (private right of action exists for enforcement of Title II regulations to require public entities to make modifications); *See* 42 U.S.C. § 12188 (private right of action exists for enforcement of Title III against private entities).

---

[2]   The ADA allows a person to sue on behalf of a disabled individual upon "reasonable grounds" that said disabled individual will be subjected to discrimination only if the violation is related to "new construction and alterations." *See* 42 U.S.C. § 12183.

### III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is appropriate when the pleadings, depositions, affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment must first demonstrate the absence of a genuine issue of material fact. *See,* Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A 'genuine issue' exists when there is sufficient evidence to permit a reasonable jury to find for the nonmoving party. *See,* Bourque v. FDIC, 42 F.3d 704 (1st Cir. 1994). A 'material fact' is one that has the potential to affect the outcome of the suit under applicable law. *Id.*

Additionally, a party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985); *See also* O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." *See* Celotex at 324. *See also,* Anderson.

In the case at bar, Defendant's property is shopping plaza. Plazas fall within the purview of the ADA under the definition of 'public accommodation'. Therefore, the Defendant's property must be brought into compliance with the ADA.

### A. DEFENDANT'S PLAZA IS A PLACE OF PUBLIC ACCOMMODATION UNDER THE ADA

Title III of the ADA provides in pertinent part that "[n]o individual shall be discriminated against on the basis of disability[3] in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation..." 42 U.S.C. §12182(a). A 'public accommodation' is defined by the ADA as including shopping plazas and malls. 42 U.S.C. §12181.

In the instant claim, the Defendant property is a plaza. The property is a public accommodation within the purview of the ADA and must be compliant with the provisions of the ADA. Architectural barriers to access on the hotel property impede in the full and equal enjoyment of the Defendant's property by the Plaintiffs. Therefore, these barriers discriminate against the Plaintiffs in violation of the ADA, and there is no genuine issue of material fact as to the existence of barriers on Defendant's property.

### B. DEFENDANT, AS OWNER/OPERATOR OF A PLACE OF PUBLIC ACCOMMODATION, IS LIABLE FOR NONCOMPLIANCE WITH THE ADA

---

[3] The ADA defines 'disability' to mean, with respect to an individual: a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. §12102(2).

Liability for noncompliance with the ADA is imposed upon "any person who owns, leases (or leases to), or operates a place of public accommodation" that discriminates[4] against an individual on the basis of disability.  42 U.S.C. §12182.

In the case at bar, Defendant has admitted to ownership of the subject property.  Since Defendant's property, as place of public accommodation, contains numerous barriers to access for disabled individuals, it is in violation of the ADA. Therefore, liability for such ADA noncompliance on Defendant's property must be imposed upon the Defendant.

In conclusion, the Defendant, as owner or operator of a place of public accommodation, is liable for noncompliance with the ADA and therefore, there is no genuine issue of material fact as to the Defendant's liability.

### C. PLAINTIFF HAS THE REQUISITE STANDING TO BRING SUIT TO ENFORCE COMPLIANCE UNDER THE ADA

In order to state a claim under the ADA, a Plaintiff must allege that he "(1) has a disability; (2) is a qualified individual; and (3) was unlawfully subject to discrimination because of [his] disability." *See* <u>Stewart v. Happy Herman's Cheshire Bridge, Inc</u>., 117 F.3d 1278,1285 (11th Cir. 1997).

Standing requires meeting three elements under Article III, § 2:

    a. injury in fact to the Plaintiff;

    b. causation of that injury by the Defendant's complained-of conduct; and

---

[4]  Discrimination includes the failure to remove 'architectural barriers' in existing facilities where such removal is 'readily achievable.'  42 U.S.C. §12182(b)(2)(A)(iv). Where an entity can demonstrate that the removal of a barrier is not readily achievable, discrimination also includes the failure to make such facilities available through alternative methods if such methods are readily achievable. 42 U.S.C. §12182(b)(2)(A)(v).

c. a likelihood that the request for relief addresses that injury.

*See generally,* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

In compliance with the requirements of *Lujan,* the Plaintiff qualifies as an individual with disabilities because he is paralyzed from the waist down and must use a wheelchair to ambulate. Harty Affid,, Exhibit A. Mr. Harty has visited the property which forms the basis of this lawsuit and plans to return to the property to avail himself of the goods and services offered to the public at the property, but for its non-compliance. Harty Affid.. He therefore has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this property.

Therefore, the Plaintiff has alleged an injury-in-fact, shown Defendant's conduct to be the cause of the injury, and has shown the relief requested will address the injury.

In Aikins v. St. Helena Hospital, 843 F. Supp. 1329, 1334 (N.D. Cal. 1994), the Court held that an *alleged* violation of the ADA is an injury *sufficient* to give rise to an Article III case or controversy. (emphasis added). Here, the individual Plaintiff alleges that he has been denied the equal use and enjoyment of the Defendant's place of public accommodation. There is no question that the injury complained of, the discrimination in the denial of equal use and enjoyment of the place of public accommodation, is an ADA violation. Finally, the injury will be redressed by a favorable decision because the removal of barriers to access will permit the equal use and enjoyment of the property by the disabled. See Generally, Atakpa v. Perimeter OB/GYN Assoc., 912 F. Supp. 1566, 1573 (N.D. Ga. 1994).

Pursuant to *Lujan,* the Plaintiff is required to show he has suffered an "'injury-in-fact' that is concrete and particularized and actual or ominent; the injury is very traceable to the callous action of the Defendant; and it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id.* at 561.

In the case at bar, the Plaintiff has shown a concrete and imminent injury that is traceable to the Defendant's actions. The Plaintiff has visited the property and desires to avail himself of the goods and services available at the Defendant's property. In its current form, the Defendant's property is not compliant with the ADA and is therefore inaccessible to persons with physical disabilities. Therefore, the Defendant's removal of the barriers to access that are not compliant with the ADA will redress the Plaintiff's injury.

### D. DEFENDANT HAS FAILED TO COMPLY WITH THE ADA

The subject plaza was constructed in 2000 and constitutes 'new construction' within the meaning of the ADA. Deposition Transcript of Joanne Golden, Exhibit B, p.5. Defendant purchased the subject property in the year 2006. Id. Ms. Golden, Defendant's property manager, does not recall whether Defendant ADA considerations were even a part of the engineering survey of the premises conducted in advance of the purchase. Id. pp. 6-7.

Ms. Golden testified that Defendant delegates its ADA obligations to its tenants. Golden Depo. T. at 20-21.

Defendant has failed to comply with the ADA in two fundamental ways. First, the plaza was defectively designed and constructed when it was built in the year 2000, in violation of 28 C.F.R.

Sec. 36.401. Second, Defendant fails to adhere to policies and procedures necessary to maintain the facility in compliance with the ADA in violation of 28 C.F.R. Sec. 36.302(a).

### E. DESIGN AND CONSTRUCTION DEFECTS

28 C.F.R. Section.36.401, governing newly constructed facilities, provides:

New Construction

(a) General. (1) Except as provided in paragraphs (b) and (c) of this section, discrimination for purposes of this part includes a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities.

Palm Trail Plaza is shaped in the configuration of an "L" with the North wing facing 10th St. And the East wing facing Military Trail. Affidavit of Pablo Baez, Para. 6, Exhibit C. Report of Herb Neff & Associates, Exhibit C-2. The UPS store is at the very center of this plaza and is located on the corner of the "L". Id. Directly in front of this store is a curb cut that served a designated accessible parking space until the inception of this lawsuit. Id. ADAAG sections 4.7.2 and 4.8.2 limit the grade of such curb cuts at 8%. This curb cut is sloped between 11% and 23% and is dangerously steep for wheelchair patrons. Baez Affid. Para. 6. This violation constitutes a design and construction defect, as the plaza was constructed in the year 2000.

In response to this lawsuit, Defendant simply painted out the handicap symbol on the parking space and changed the sign. The new sign continues to have the handicap symbol, but now also has a directional arrow pointing westward. The access aisle remains. Most notably, the curb cut has not been fixed. Nor is there any signage or warning from above that wheelchair patrons are not to use this dangerous element. The configuration of the parking space, which continues to have a sign and access aisle, is confusing to disabled patrons who continue to have

reason to believe that the parking space is designated accessible.  Id.  At 7; Harty Affid. Para. 7.

In replacement of this parking space.  Defendant installed two new spaces at the far northwest end of the facility, across the parking lot from the entrances.  Baez Affid. At 7.  Now, instead of a designated accessible space centrally located, there are two parking spaces at the far end, forcing disabled patrons to cross the parking lot, through potential vehicular traffic and past non-disabled parking spaces which are located by the entrances.  Id.

Plaintiff submits that these quick fix measures taken by Defendant to beat the lawsuit are inadequate.  The standards of readily achievable barrier removal do not apply, because this facility was built in the year 2000.  Therefore, directional signage and moving the parking spaces to a more distant location do not remedy the problem. This is a design and construction defect which must be fixed.  The curb cut must be replaced with a new curb cut with a compliant slope.  Baez Affid. Paras. 7-9.

The second major design and construction defect is the absence of compliant accessible route from the public bus stops or sidewalk, as required by ADAAG section 4.3.  The plaza was designed and constructed without any such route.  In response to this lawsuit, Defendant constructed a path at the far northwest end of the plaza, leading to 10th Street.  Golden Depo. At 16; Harty Affid., para. 6; Baez Affid. Para 10.

There remains, however, no accessible route from the bus stop on Military Trail.  Baez Affid. Para. 10-13.  Defendant claims there is in fact a route from this location to its facility, but that claim is misleading.  First, the concrete pathway that does exist is sloped at 8% and requires handrails.  Id.  Second, this pathway leads *across* property owned by Defendant, namely a

landscaped swale which Defendant owns.  However, the pathway ***does not lead to*** Defendant's property.  Rather, it serves the parking lot owned separately by a Bank.  Any wheelchair patron taking this route ends up in the Bank parking lot, then must travel through vehicular routes to gain access to Defendant's facility.  Id.

### F.  POLICIES AND PROCEDURES--FAILURE TO MONITOR TENANT SPACES

Owners of public accommodations are required to implement and adhere to certain policies and procedures.   The applicable regulations provide:

> A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

28 CFR Part 36.302(a).

According to Joanna Golden, Defendant delegates ADA responsibility to its tenants. Golden Depo. At 20-21.

A landlord has an independent obligation to comply with the requirements of the ADA, and may not shift all responsibility to a tenant through a lease agreement. Botosan v. Paul McNally Realty, 216 F.3d 827, 832-34 (9th Cir.2000); Access 4 All, Inc. v. Atlantic Hotel Condominium Ass'n, Inc., No. 04-61740-CIV, 2005 WL 5643878, at *14 (S.D.Fla. Nov.23, 2005); Indep. Living Res. v. Or. Arena Corp., 982 F.Supp. 698, 766-68 (D.Or.1997). The ADA places an obligation on landlords  by providing that prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.

§ 12182(a). The ADA also provides that a party, in addition to not "directly" discriminating, may not indirectly discriminate "through contractual, licensing, or other arrangements...." 42 U.S.C. § 12182(b)(1)(A)(I). The regulations on the ADA promulgated by the Department of Justice provide that, while a landlord and tenant may allocate responsibility for ADA compliance in their lease, this allocation of responsibility is only effective "[a]s between the parties." 28 C.F.R. § 36.201(b). A lease agreement does not affect the rights of a third party bringing a claim against a party to the lease, and thus "both landlord and tenant remain fully liable for compliance with all provisions of the ADA relating to that place of public accommodation." Botosan, 216 F.3d at 833 (quoting Dept. of Justice, Technical Assistance Manual on the Americans With Disabilities Act § III-1.2000 (1994)). Any contractual allocation of responsibility between landlord and tenant can be subsequently addressed by those parties between themselves. Indep. Living Res., 982 F.Supp. at 768.  Connors v. Orlando Regional Healthcare System, Inc. 2009 WL 2524568 *2 (M.D. Fla. 2009).

The purpose behind this liability is to encourage the landlord to *monitor* ADA compliance by its tenants. Botosan, 216 F.3d at 834;  Indep. Living Res., 982 F.Supp. at 768.

In the instant case, it is apparent that Defendant completely fails to monitor ADA compliance.

First, Defendant failed to monitor the facility for ADA compliance whatsoever.  Although Defendant conducted an engineering survey when it purchased the facility in 2006, it did not consider ADA compliance.  Golden Depo. At 6-7.  This admission is obvious, as various tenants were allowed to adhere fixtures to the walls in such manner as to render their restrooms

inaccessible. These include amenities out of reach in the Winn Dixie and Sal's restrooms. These include toilet paper and paper towel dispensers blocking access to the toilet grab bars, rendering the toilets inaccessible. These also included sinks that were completely unusable by wheelchair patrons because they were either too low or had support legs underneath. Baez Affid. Para. 3; Harty Affid. Para. 4. These features, which remain fixed in place for periods of months or years, are evidence that Defendant has perhaps never monitored its plaza to ensure ADA compliance.

Second, Defendant obviously fails to monitor the facility on any daily or weekly basis to ensure ADA compliance. Trash cans are allowed to be placed by doors and under grab bars to obstruct maneuvering clearances and access to toilets. Baez Affid. Para. 3; Harty Affid. Para. 4.

Defendant prevented plaintiff's expert from inspecting any tenant spaces other than Winn-Dixie. Needless to say, Defendant had hastily moved the non-compliant fixtures in an attempt to feign ADA compliance. What Defendant did not do, however, was fix any other tenant space. Recently, Plaintiff revisited the facility and attempted to use the public restroom in the UPS Store. He took pictures of the conditions. Those pictures were incorporated into the report of Plaintiff's expert, at pp. 17-18. See also Harty Affid. Para. 9; Baez Affid. Para. 4-5. This restroom remains substantially non-compliant. The grab bars are non-compliant. Moreover, the route to the restroom and the restroom itself is cluttered with ladders and buckets so that the restroom is only accessible to non-disabled patrons. Id.

## G.  INTENTIONAL DISCRIMINATION

In its Affirmative Defenses, Defendant claims that it should have been afforded pre-suit notice. [DE 10, para. 14.] This claim is entirely disingenuous. Indeed, failure to properly design

and construct a new facility constitutes intentional discrimination against disabled persons. Access Now, Inc. v. South Florida Stadium Corp., 161 F.Supp.2d 1357, 1362 (S.D. Fla. 2001); Association For Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F.Supp.2d 1353, 1362, n.5 (S.D. Fla. 2001). When it purchased the facility, Defendant performed no meaningful ADA survey. Prior to purchase, Defendant either did not know or did not care that its facility was non-compliant.

Later in 2006, however, Defendant in fact became aware that the plaza had ADA violations. Indeed, Defendant received notice that a complaint had been drafted with regard to ADA violations at the facility. Golden Depo. At 10-11. See also Memo from Amanda Thomas, Property Manager, to All Tenants, Dec. 5, 2006, Exhibit D. Although the lawsuit had been drafted, and apparently presented to Defendant, it was never filed. Golden depo. At 10-11. Defendant, therefore, did nothing in response thereto. Defendant performed no remediations or modifications. Id.

Indeed, it took the instant lawsuit before Defendant began to fix anything. Moreover, it fixed only those portions specifically identified by Plaintiff.

## H.  INJUNCTIVE RELIEF IS NECESSARY

For the reasons set forth above, injunctive relief is necessary. Defendant must be ordered to fix the non-compliant curb cut by the UPS store. Defendant must also be ordered to install a compliant pathway leading from the bus stop on Military Trail, with an accessible routed to its own facility (not the Bank). With respect to the ramp leading to the bank (which crosses Defendant's land), this ramp must be made compliant. Moreover, Defendant must be requried to

16

implement policies and procedures to monitor all spaces, inclusive of tenant spaces, to ensure that their restrooms and other features remain compliant.  Defendant has known of its ADA violations since 2006, but has done nothing.  In response to this lawsuit, Defendant moved a few items in the Winn Dixie restroom.  These items, however, are subject to frequent change.  Baez Affid., paras. 3(a)(i)(ii).  Removal of barriers which are movable and subject to frequent change cannot moot a claim because the defendant remains free to return to its old ways of discrimination.  Moeller v. Taco Bell Corp., 2007 WL 2301778 *8 (N.D. Cal 2007)(mootness cannot apply to conditions which "change frequently due to regular maintenance, remodels, repairs, and normal wear and tear.")

     Defendant's failure, or refusal to monitor, is evidenced by the prior lawsuit that was never filed, and its limited response to the instant lawsuit.  While it rearranged a few items in the Winn Dixie restroom to pass R. 34 inspection, the restroom in the UPS store remains completely inaccessible.

     This lawsuit is clearly necessary and injunctive relief is warranted.

**WHEREFORE**, Plaintiff requests that Summary Judgment be entered in Plaintiff's favor as there exists no genuine issue of material facts, and that the Court Order that the Defendant bring its property into immediate compliance with the ADA, and award Plaintiff his attorney's fees, and litigation expenses, including expert fees and costs.

Respectfully submitted,

Attorney for Plaintiffs:

 /s/ Thomas B. Bacon
Thomas B. Bacon, P.A.
Attorney-At-Law
4868 S.W. 103rd Ave.
Cooper City, FL 33328
ph. (954) 925-6488
fax (954) 237-1990
tbb@thomasbaconlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system upon all parties of record this 10th day of May, 2010.

 /s/ Thomas B. Bacon