UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OWEN HARTY, Individually,

    Plaintiff,                                        CASE NO. 0:09-cv-61412-JAL

v.

SRA /PALM TRAILS PLAZA, LLC,
A Foreign Limited Liability Company,

    Defendant.
_____/

## AFFIDAVIT OF PABLO BAEZ

I, PABLO BAEZ, state under oath as follows:

1. I am competent to testify at trial in this action.

2. I am an accessability inspector. In this capacity, I inspect places of public accommodation for purposes of surveying compliance with the Americans With Disabilities Act Accessibility Guidelines ("ADAAG"). As such, I inspect places of public accommodations for the purpose of determining whether ADAAG violations exist. In the event I find violations, I then determine the most appropriate remedial measure, based on the cost of the remedial measure as well as the existing conditions of the violation, such as structural or other criteria that would potentially impact the ability to implement the remedial measure. I then generate a report based on my findings and recommendations. My curriculum vitae is attached to my report. I have performed several hundred such inspections and generated several hundred reports of my findings.

3. Prior to the commencement of this lawsuit, our company inspected the PALM TRAILS

PLAZA, 1101 South Military Trail, Deerfield Beach Florida. The purpose of this inspection was to ascertain the nature of ADA violations present at that facility. Based on that inspection, we authored an initial report of the ADA violations I observed at the property. Several of the pictures I took at that time are attached hereto as Composite Exhibit C-1. On January 29, 2010, our team inspected the premises pursuant to Rule 34. Our report based on that inspection is attached as Exhibit C-2. I hereby affirm the findings of both reports.

The pictures taken of the condition of the premises prior to the filing of the instant lawsuit show the following violations:

a. Several pictures are evidence that the owner and operator of the plaza fails to monitor its tenant spaces to ensure that the tenants remain compliant with the ADA. This includes a failure to adhere to policies and procedures to keep required maneuvering spaces free of obstructions. As one picture shows, Tenant Winn Dixie is allowed to place its trash receptacle to obstruct a wheelchair patron from exiting the men's room. Tenant Winn Dixie is also allowed to place its trash receptacle in the accessible stall such that it obstructs the maneuvering clearance for disabled patrons. In Sal's Restaurant, again the trash receptacle obstructs use of the rear grab bar. In other pictures, the plaza owner allows its tenants to place semi-permanent features so that they violate the ADAAGs and discriminate against disabled persons. Examples shown by these pictures are the toilet seat cover dispenser in Winn Dixie that is unreachable by wheelchair patrons; the toilet paper dispenser obstructs access to the side grab bar; the Winn Dixie sink is too low for disabled use; the sink in Sals' Restaurant is completely unusable by wheelchair patrons; the toilet seat cover dispenser is also placed so that disabled patron cannot reach it; Also in Sal's, the toilet paper dispenser obstruct access to the grab bar.

i. These pictures are evidence that the owner and management of the plaza fails to monitor its tenant spaces to ensure that the interior spaces of the plaza remain accessible to disabled patrons. The placement of trash receptacles obstructing accessible features evidences a lack of periodic monitoring to ensure ADA compliance. The placement of fixed amenities that either obstruct or are out of reach show a complete lack of monitoring of interior spaces. These are features that are screwed to the wall improperly and allowed to remain for indefinite periods of time. These existence of these latter, fixed objects, shows a complete lack of monitoring because these conditions are allowed to remain in violation for long periods of time.

ii. This failure to monitor means that objects that can be easily moved for purposes of passing a Rule 34 inspection, then can be moved back and become obstructions again. Moreover, tenants constantly maintain, renovate, remodel and rearrange their spaces. This includes renovation of restrooms and the replacement of amenities. Without a policy and procedure by the owner and operator of the plaza, tenants are free to return fixtures and amenities to non-compliant and obstructive positions whenever they choose.

4. Subsequent to the Rule 34 inspection conducted by our team, Plaintiff Owen Harty revisited the property and provided us with additional pictures he took inside the UPS Store. The UPS Store was not the subject of our Rule 34 inspection as we were barred by Defendant from inspecting that portion of the property.

5. Those pictures are incorporated into our report. As they show, the public restroom at the UPS Store remains completely inaccessible. The rear grab bar is non-compliant. More significantly, the tenant is allowed to use the public restroom as a storage area for ladders and buckets. This is not an impediment for ambulatory patrons, but completely prevents wheelchair

patrons from using the restroom. The latch side access to the door, as well as the maneuvering spaces inside the restroom are clogged with debris.

6. The subject plaza is shaped at a right angle, in the configuration of an "L". The North wing faces 10th St and East wing faces Military Trail. The UPS Store is located at the central corner of the plaza. Prior to the inception of the lawsuit, our pre-suit investigation revealed that a designated accessible parking space was located immediately in front of the UPS Store. Composite Exhibit C-1. This space was located in an optimal position, namely central to the accessible entrances of the plaza. However, this space was served by a substantially non-compliant curb cut. ADAAG 4.7.2 and 4.8.2 require that curb cuts be sloped no steeper than 8%. This curb cut is sloped at between 11% and 23%.

7. In response to the lawsuit, Defendant failed to correct this non-complaint condition. Instead, Defendant removed the accessible parking space and moved it to the far end of the plaza. Furthermore, Defendant replaced the accessible parking space sign with a directional sign pointing to the far end of the plaza. In this regard, it is highly significant that this facility constitutes new construction, as it was built subsequent to the effective date of the ADA. The curb ramp in front of the UPS store constitutes a design and construction defect, subject to the strict provisions of the ADAAG. The barrier removal provisions do not apply to this condition. Directional signage, which Defendant attempts to employ, are not adequate to remedy design and construction defects under new construction standards. Rather, the proper remedy is to fix the condition. The present condition of the facility is that a dangerously steep curb ramp remains in the middle of the plaza. The measures taken by Defendant are misleading and confusing to wheelchair patrons. An access aisle remains in place and a sign remains in place with the

international symbol of accessability. This can easily be misconstrued as remaining a designated accessible parking space. The only change is that an arrow points toward the far West end. Thus, disabled patrons are not adequately warned that they are no longer to park at this location. If they do, they are forced to travel the length of the parking lot all the way to the far North end, approximately 300 feet away, traveling through the vehicular area the entire journey. Moreover, there is no sign on the other side of the curb ramp warning disabled patrons against attempting to use the ramp from above.

8. Moreover, there is no longer a compliant accessible parking space located in the center of the facility. In its stead, two new parking spaces have been placed at the far west end and across the parking lot from the facility. These spaces fail to comply with ADAAG section 4.6.2, which requires that they be located on the shortest accessible route to the entrances of the building. Composite Exhibit C-2. While there are non-disabled parking spaces located adjacent to the building, these disabled parking spaces are across the lot and require disabled patrons to travel through traffic to access the curb cut.

9. In summary, Defendant's reconstruction of this fundamental design defect is inadequate. The proper remedy is to fix the non-compliant curb cut and ensure that the parking spaces are properly sloped.

10. Another design and construction defect at the inception of this lawsuit was the complete absence of any accessible route from the public sidewalks to the plaza. The plaza is served by two roads, SW 10th Street., along the North side, and Military Trail, along the East side. In response to this lawsuit, Defendant installed a route connecting the far Northwest end of the plaza to the public sidewalk running along SW 10th Street. Our investigation revealed that

there is a bus stop on the Military Trail at the far southeast side of the facility. Wheelchair patrons disembarking from the bus are required to travel many hundreds of feet around the corner, down SW 10th Street to the entrance at the far Northwest end of the Plaza. Thus, Defendant's new pathway creates the longest possible distance from the bus stop at the far southeast end on Military Trail to the route at the far northwest end of the plaza on 10th St.

11. Although there is an existing pathway from the Military Trail sidewalk, this pathway is non-complaint for several reasons. First, this pathway has slopes up to and exceeding 8% and there are no handrails.

12. More significantly, this pathway cuts through the landscaped swale owned by the SRA Palm Trails Plaza. However, it does not lead to Palm Trail's property. Rather, the property this leads to is separately owned by JP Morgan Chase Bank. Any disabled traveler using this pathway from the Military Trail bus stop or sidewalk will necessarily end up in the JP Morgan Chase Bank parking lot. He or she must then travel through the middle of the vehicular route (through heavy traffic) along the road from the Bank parking lot into the SRA Palm Trails parking lot. Non-disabled individuals, by contrast, can walk directly over the landscaped areas from the bank parking lot to the plaza.

13. To summarize, this is not a compliant accessible route to SRA Palm Trails Plaza. Rather, it is a non-compliant ramp leading to a separate property owned by the bank. To the extent that this ramp does exist on the landscaped swale owned by SRA Palm Trails, it must be rendered compliant by installation of handrails.

15. I hereby swear and affirm under oath that my report referenced above is truly and accurately reflects my findings, observations, recommendations and cost estimates. I incorporate

it herein by reference as if fully set forth in this affidavit.

Pursuant to 28 U.S.C. Section 1746, I declare, certify, verify, and state, under penalty of perjury that the foregoing is true and correct. Executed on May 8, 2010.

_____
PABLO BAEZ