# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-CV-61412-LENARD/TURNOFF

OWEN HARTY, individually,

      Plaintiff,

v.

SRA/PALM TRAILS PLAZA, LLC, a foreign
Limited Liability Company,

      Defendant.

_____/

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW[1]

Pursuant to Rule 56, Fed. R. Civ. P., Defendant, SRA/Palm Trails Plaza, LLC ("Defendant"), files this Opposition to Plaintiff's Motion for Summary Judgment with Incorporated Memorandum of Law filed by Plaintiff, Owen Harty ("Plaintiff"), and in support thereof states:

## I.  INTRODUCTION

Plaintiff is no stranger to this Court or federal courts around the country.  According to Public Access to Court Electronic Records ("PACER"), over the course of the past four years, Plaintiff has filed 138 Americans with Disabilities Act ("ADA") complaints, including fifty (50) such cases in this District alone.[2]  Plaintiff's brief yet extensive ADA litigation experience is no surprise considering the fact that, as Plaintiff admits, he purposefully seeks out ADA violations that do not necessarily affect him personally in locations where he normally may not visit.  Depo. Owen Harty 67:23 – 68:22 (Jan. 19, 2010) (cited hereinafter as "[Harty Depo. __:__]").  Indeed, Plaintiff, refers to himself as a "tester," which he defines as "an advocate that [sic] checks on property that is not accessible."  [Harty Depo. 56:14 – 57:3].  Notably, however, Plaintiff is not

---

[1] Defendant has filed an emergency motion seaking an order staying the Court's consideration of Plaintiff's Motion for Summary Judgment and compelling Plaintiff to respond to discovery.  [DE 36].  Defendant's motion has been fully briefed and is still under consideration.  [DE 36, 38, 39].  Because Defendant's emergency motion is still pending, Defendant is filing this Opposition in the abundance of caution, though Defendant believes that it must still complete discovery in order to fully brief the issues addressed in Plaintiff's Motion for Summary Judgment.

affiliated with any ADA advocacy groups. [Harty Depo. 35:8 – 35:10].

In this case, Plaintiff filed an ADA Complaint against Defendant, the owner of a shopping center located at 1101 South Military Trail, Deerfield Beach, Broward County, Florida (the "Property"), after Plaintiff visited the Property and allegedly encountered or observed ADA violations in  four (4) separate locations on the Property.  [Harty Depo. 87:6 – 87:9, 90:7 – 90:15, 91:16 – 106:21, 147:5 – 148:23, 115:17 – 118:8, 119:16 – 120:4, 163:5 – 163:15]; Aff. Owen Harty ¶ 4 (Apr. 30, 2010) (cited hereinafter as "[Harty Aff., ¶ _]"); Pl.'s Ans. to Interrogs. ¶¶ 2, 4 – 6 (Dec. 31, 2009) (cited hereinafter as Interrogatory Response, ¶ _).  Defendant's First Set of Interrogatories to Plaintiff and Interrogatory Answers are attached hereto as Exhibit 1).  The Property is situated on 8.47 acres (approximately 368,953 square feet) and the shopping center on the Property is approximately 76,362 square feet.  *See* Aff. Joanna Golden ¶ 3 (May 26, 2010) (cited hereinafter as "[Golden Aff., ¶ 3]"), attached hereto as Exhibit 2; Aff. Jeffery Gross ¶¶ 57-58 (May 26, 2010) (cited hereinafter as "[Gross Aff., ¶ _]"), attached hereto as Exhibit 3.[3] Plaintiff did not notify Defendant that he had encountered or noticed ADA violations while at the Property, depriving Defendant of the opportunity to evaluate and remediate any ADA violations before being sued.  [Golden Aff., ¶ 8].  Rather, Plaintiff sued Defendant, making sweeping allegations about the lack of ADA compliance at the entire Property.  Compl. ¶ 10 (Sept. 8, 2009).  However, once discovering what the few specific violations were that Plaintiff allegedly encountered or observed at the Property and that the violations alleged in the Complaint had been woefully exaggerated (some not even being ADA violations), Defendant immediately sought to remediate those few violations.  [Golden Aff., ¶ 9].  By January 29, 2010, the date when Plaintiff conducted his Rule 34 inspection of the Property, each ADA violation Plaintiff alleged in his Complaint and discovery responses to have encountered or observed, had been remediated and brought into compliance with the ADA.  *Id*. at ¶ 10; [Gross Aff., ¶ 10]).  Plaintiff

---

[2] *See e.g. Moore v. Bryant*, 2006 WL 3091530, *3 fn 3 (M.D. Fla. 2006) (taking judicial notice of PACER records); *Grandinetti v. Clinton*, 2007 WL 1624817, *1 (M.D. Ala. 2007) (taking judicial notice of PACER records).

[3] Though Defendant's deadline to furnish its expert witness list and its expert reports or summaries is more than three (3) months away (September 3, 2010), due to the timing of Plaintiff's Motion, Defendant must provide expert opinion in support of its opposition to the Motion.  Accordingly, Defendant is also filing the Affidavit of Jeffery Gross, Defendant's ADA expert.  To the extent possible, Defendant has complied with Rule 26(a)(2), Federal Rules of Civil Procedure, and S.D. Fla. L.R. 16.1(k).  However, the Affidavit of Jeffery Gross is not intended to be Defendant's final written expert report.

has himself acknowledged that all of the ADA violations he encountered or observed at the Property prior to filing his Complaint have been completely remediated.  [Harty Aff., ¶ 9].  Notwithstanding Defendant's voluntary remediation of the ADA violations listed in Plaintiff's Complaint and discovery responses, Plaintiff still continues to pursue an injunction to force Defendant to rectify conditions which have already been rectified in full.

In an effort to draw his case out further, but without giving Defendant a fair opportunity to even evaluate Plaintiff's expert report or complete discovery of Plaintiff's claims, Plaintiff has filed a Motion for Summary Judgment (the "Motion"), which is riddled with blatant mischaracterizations, omissions, generalizations and arguments impermissibly raised for the very first time in the Motion.  As set out in great detail below, Plaintiff is seeking summary judgment on ADA claims he has no standing to assert (as has previously been decided in this very case) and, to the extent that Plaintiff does have standing to assert ADA claims for specific ADA violations, such claims are now moot.  Plaintiff's plan to avoid the inevitable – denial of all relief and judgment in Defendant's favor – will not succeed, as the law in this jurisdiction clearly dictates that Plaintiff is not entitled to injunctive relief or attorneys' fees (the only remedies available to an ADA plaintiff) from Defendant.  Plaintiff cannot deny the facts (that he himself has admitted in discovery and in his Affidavit filed with his Motion) and applicable case law in this jurisdiction and Plaintiff's Motion must be denied.[4]

## II.  MEMORANDUM OF LAW

The Federal Rules of Civil Procedure prescribe that summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[4] Although Defendant intended (and still intends) to file its own Motion for Summary Judgment, Plaintiff's tactics of withholding its expert report until it filed its Motion rendered it virtually impossible for Plaintiff to adequately prepare its own Motion for Summary Judgment and Memorandum of Law.  This notwithstanding, the Court still possesses the power to *sua sponte* grant summary judgment in Defendant's favor.  *See In re Health Am. Med. Group, Inc.*, 293 B.R. 799, 805 (Bank. M.D. Fla. 2003)(a court has the inherent power to *sua sponte* grant summary judgment against the movant even though the opposite party has not actually filed a motion for summary judgment); *Ramsey v. Coughlin*, 94 F.3d 71, 73  (2d Cir. 1996)("it is generally established that "the trial court is not precluded from entering summary judgment for the non-movant if, in reality, no factual dispute exists and the non-movant is entitled to summary judgment as a matter of law").  Certainly, several dispositive issues in this case such as Plaintiff's lack of standing and the mootness of the Plaintiff's claims, even applying the evidence in the light most favorably to Plaintiff, would entitle Defendant to summary judgment.

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the moving party satisfies this burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial.  *Id.*; Fed. R. Civ. P. 56(e).  Such an issue of fact is a genuine issue if it can reasonably be resolved in favor of either party.  *Anderson*, 477 U.S. at 250-251.  As is shown below, Plaintiff is not entitled to summary judgment in his favor.

**A.  Plaintiff has no standing to pursue his claims.**

**i.      Plaintiff lacks standing to pursue any ADA claims against Defendant.**

Standing is comprised of three elements: (1) injury in fact; (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To demonstrate the injury in fact element of standing, a plaintiff must have suffered an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  *Id.*  The party who invokes federal jurisdiction carries the burden of proving these elements.  *Id.*  Plaintiff does not satisfy these elements and, thus, lacks standing.

Plaintiff testified in deposition that the *only* reason he visited the Property prior to filing suit was to follow a someone as part of his job as a private investigator.  [Harty Depo. 88:4 – 88:9, 89:19 – 89:23, 90:18 – 90:22].  To date, Defendant has been unable to verify Plaintiff's testimony due to Defendant's inability to obtain service of a *subpoena duces tecum* on Plaintiff's employer.  Assuming though that Plaintiff's testimony is true, Plaintiff does not have standing in this case because he has not shown any reasonable expectation of returning to the Property in the future.[5]  *See Lujan*, 504 U.S. at 560; *see also . see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (stating, "[a]llegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (internal citation and quotation omitted); *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1365-66 (S.D. Fla. 2001) (stating, "[c]ourts in this Circuit addressing the issue have consistently refused to grant injunctive relief absent evidence that the plaintiff actually suffered, and will again suffer, discrimination in violation of Title III"); *Rosenkrantz v. Markopoulos*, 254 F. Supp.

---

[5] Because Plaintiff's only visits to the Property prior to filing his Complaint were while working as a private investigator and following someone to the Property, Plaintiff would have to present evidence showing that he *will be* returning to the Property at a foreseeable time in the future to

2d 1250, 1252 (M.D. Fla. 2003) (*citing Lujan*, 504 U.S. at 563 – 564) (stating, "someday intentions – without any description of concrete plans, or indeed even any speculation of *when* the some day will be – do not support a finding of 'actual or imminent' injury.").

Moreover, Plaintiff, who is without question, a serial ADA plaintiff, lives in Tamarac, 12.9 miles from the Property.  [Harty Depo. 4:23 – 5:4]; [Golden Aff., ¶ 7].  Plaintiff testified that the only tenant spaces he went into that are still in business at the Property are Winn-Dixie and the UPS Store.  [Harty Depo. 114:9 – 114:12].  There are eighteen (18) Winn-Dixie grocery stores and twenty-nine (29) UPS Stores closer to Plaintiff's home than the ones located at the Property. [Golden Aff., ¶ 7].  Thus, the threat of future injury to Plaintiff is even less likely.  *See Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 – 1375 (M.D. Fla. 2004) (holding that ADA plaintiff did not have standing to sue a hotel where the plaintiff did not live close to the hotel, there were numerous alternative hotels where plaintiff could have stayed that were closer to his intended destination and where plaintiff only happened upon the hotel by chance[6] and further holding that, "in view of [plaintiff's] extensive litigation history, [plaintiff's] professed intent to return to the property is unsufficient."); *see also Harris v. Stonecrest Care Auto Center, LLC*, 472 F. Supp. 2d 1208, 1213 – 1215 (S.D. Cal. 2007) (noting that the ADA plaintiff had filed so many lawsuits that he could not even recall all of them[7] and listing elements to determine whether an ADA plaintiff is likely to return to a property: "(1) proximity of the place of public accommodation to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definiteness of plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the accommodation in question."); *Norkunas v. Wynn Resorts Holding, LLC*, 2007 WL 2949569, *4 (D. Nev. 2007) (holding that ADA plaintiffs, who did not live in close proximity to defendant's property and who were serial plaintiffs, did not have standing to sue defendant);

Assuming, however, that Plaintiff visited the Property in his capacity as an ADA tester, given that Plaintiff lives as far from the Property as he does and that there are so many Winn-Dixie

---

follow another person.  Surely, Plaintiff is not clairvoiant and cannot reasonably predict if and when someone he is following will travel to the Property in the foreseeable future.
[6] Similarly, Plaintiff only came upon the Property "by chance" while following somone as part of his job as a private investigator.  [Harty Depo. 88:4 – 88:9, 89:19 – 89:23, 90:18 – 90:22].
[7] Like the plaintiff in the Harris case, Plaintiff was unable to recall in his deposition exactly how many ADA lawsuits he has filed, testifying that he believed he had filed eighty (80) or more. [Harty Depo. 34:12 – 34:13].  In fact, by the date of Plaintiff's deposition, according to PACER records, he had actually filed 110 ADA lawsuits.

grocery stores and UPS Stores closer to Plaintiff's home than the ones at the Property, the likelihood of Plaintiff actually returning to avail himself of the goods and services offered at the Property is insufficient for Plaintiff to prove standing.  *See Access for the Disabled, Inc. v. Rosof*, 2005 WL 3556046, *2 (M.D. Fla. 2005) (explaining that ADA plaintiff's admission that he was a tester does little to support his allegation that he is threatened by immediate future injury); *see also Rosenkrantz*, 254 F. Supp. 2d at 1252.

> ii.    **Assuming Plaintiff has standing in this case, Plaintiff's standing is limited to architectural barriers he personally encountered, observed or had personal knowledge of at the time he filed his Complaint.**

In the context of ADA cases, District Courts within the Eleventh Circuit Court of Appeals, including the Southern District of Florida, have consistently held that ADA plaintiffs only have standing to complain about alleged barriers they encounter, observe or have actual knowledge of prior to the time they file their complaints.  *See e.g. Wein v. St. Lucie*, 461 F. Supp. 2d 1261, 1265 (S.D. Fla. 2006); *Brother v. CPL Investments, Inc.*, 317 F. Supp. 2d 1358, 1368 (S.D. Fla. 2004) (holding that "[p]laintiffs do not have standing to complain about alleged barriers which they were unaware of at the filing of their complaint"); *South Florida Stadium Corp.*, 161 F. Supp. at 1365-66 (S.D. Fla. 2001) (explaining that an ADA plaintiff's standing is limited to violations that affect his specific disability and that he personally encountered or about which he had actual notice); *Resnick v. Magical Cruise Co., Ltd.*, 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001)(plaintiffs must, at least, prove knowledge of the barriers and that they would visit the premises in the imminent future but for those barriers); *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1254 (M.D. Fla. 2000) (stating, "[t]he Court holds that plaintiff only has standing in this action to challenge the alleged ADA violations he personally encountered...").

In an Order entered in this case [DE 28], Magistrate Judge Turnoff, quoting *Fox v. Morris Jupiter Assoc.*, 05-CIV-80689, 2007 WL 2819522, *6, fn. 5 (S.D. Fla. 2007), explained, "Courts in the Eleventh Circuit… requir[e] a showing of plaintiff's actual knowledge of particular barriers in order for the plaintiff to have standing to challenge those barriers."  Order, p. 3 (Apr. 21, 2010).[8]  Accordingly, Plaintiff does not have standing to seek relief related to alleged ADA violations he did not encounter, observed or have knowledge of when he filed his Complaint.

---

[8] The findings in Magistrate Judge Turnoff's Order [DE 28] are binding on the Court as the law of this case.  *See Royal Ins. Co. v. Latin American Aviation Serv., Inc.*, 210 F.3d 1348, 1350 (11th Cir. 2000) (question previously decided by magistrate judge is "binding… as the law of the

Plaintiff's discovery responses, deposition testimony and even Plaintiff's own Affidavit filed in support of his Motion, clearly set forth the limits of Plaintiff's standing in this case. According to Plaintiff, prior to filing his Complaint, Plaintiff visited the Property only three times. [Harty Depo. 89:14 – 91:18].  During the first visit to the Property, on an unknown date, Harty drove to the Property but did not get out of his car and did not notice any ADA violations. [Harty Depo. 89:24 – 90:6; 91:10 – 91:12].  During the second visit to the Property, sometime in late 2008 or early 2009, Plaintiff noticed one alleged ADA violation – that a ramp in front of the UPS Store at the Property was too steep.[9]  [Harty Depo. 87:6 – 87:9, 90:7 – 90:15].  Harty testified at deposition that he did not notice any other ADA violations at the Property during his second visit.  [Harty Depo. 90:13 – 90:15; 91:13 – 91:15].  During the third visit to the Property, on July 2, 2009, Plaintiff drove himself to the Property and noticed ADA violations inside the Winn-Dixie men's restroom[10] [Harty Depo. 91:16 – 106:21, 147:5 – 148:23], the Quiznos men's restroom[11] [Harty Depo. 115:17 – 118:8, 119:16 – 120:4] and that there was no path to the Property from bus stops and a public sidewalk surrounding the Property[12] [Harty Depo. 163:5 – 163:15].  Plaintiff's Complaint, Interrogatory Responses, deposition testimony and Affidavit filed in support of his Motion do not identify any other ADA violations encountered, observed or known to Plaintiff prior to the filing of his Complaint.[13]  Accordingly, these four (4) specific

---

case."); *see also U.S. v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (stating, "[u]nder the law-of-the-case doctrine, an issue decided at one stange of a case is binding at later stages of the same case.").

[9] *See also* Interrogatory Response, ¶ 5; [Harty Aff., ¶ 4].

[10] *See also* Interrogatory Response, ¶¶ 2, 6; [Harty Aff., ¶ 4].  Plaintiff admitted in deposition that he did not notice any other ADA violations inside Winn-Dixie.  [Depo. 106:19 – 106:21].

[11] *See also* Interrogatory Response, ¶ 6; [Harty Aff., ¶ 4].  Plaintiff admitted in deposition that he did not notice any other ADA violations inside Quiznos.  [Harty Depo. 119:21 – 120:4].  Quiznos is no longer a tenant at the Property.  [Golden Aff., ¶ 5].

[12] *See also* Interrogatory Response, ¶ 4; [Harty Aff., ¶ 4].  Plaintiff admitted, however, that he never took a bus to the Property.  [Depo. 135:4 – 135:6].  In Plaintiff's interrogatory responses, he explained that he actually drove himself to the Property.  Interrogatory Responses, ¶ 2.  Thus, Plaintiff would not have ever attempted to access the Property from the public sidewalk.  However, as discussed below in detail, there is now a pathway leading from the public sidewalk around the Property directly to the Property, which remedies this particular issue.  Such remediation has been acknowledged by Plaintiff in his deposition and Affidavit.  *See* [Harty Depo. 128:14 – 128:17; 164:21 – 165:25]; [Harty Aff., ¶ 6].

[13] Plaintiff admitted in deposition that he has never even been inside any of the other tenant spaces at the Property and, based on Plaintiff's testimony, there is no reasonable expectation that Plaintiff will ever enter other tenant spaces at the Property.  [Depo. 114:9 – 114:12, 150:24 – 151:13].  Other tenant spaces include Deerfield Nails, AAA Dry Cleaners and Ace Underwriting

aforementioned ADA violations are the *only* violations Plaintiff could possibly have standing to address in his Motion and in this case. However, Plaintiff still does not have standing to pursue claims for the four violations he alleged to have encountered or observed.

### iii. Plaintiff's Motion impermissibly seeks redress for architectural barriers Plaintiff did not personally encounter or have knowledge of at the time he filed his Complaint.

#### a. UPS Store restroom

Notwithstanding the clear and unambiguous proposition of law discussed above and the parameters of Plaintiff's permissible claims, Plaintiff's Motion addresses, *for the very first time*, alleged ADA violations Plaintiff admits in his Motion to have only "recently" discovered. Specifically, Plaintiff's Motion explains that he "[r]ecently… visited the [Property] and attempted to use the public restroom in the UPS Store," which was "substantially non-compliant."  Mot., p. 15; *see also* [Harty Aff., ¶ 9].  First, Plaintiff testified in his January 19, 2010 deposition that he had never noticed any ADA violations before and never even knew if there was a public restroom inside the UPS Store.  [Harty Depo. 88:10 – 88:14; 90:13 – 90:15; 91:13 – 91:15; 151:14 – 151:21].  If, by January 19, 2010, Plaintiff did not know of any ADA violations inside the UPS Store and was not aware of the existence of a public restroom inside, he would not have had any knowledge of ADA violations inside the UPS Store when he filed his Complaint on September 8, 2009.  [DE 1].  Because Plaintiff had no knowledge of any ADA violations inside the UPS Store at the time he filed his Complaint, he does not have standing to seek redress for any alleged ADA violations "recently" discovered.[14]

Second, putting aside for the moment the controlling law on standing, Plaintiff still could not rely on the barriers he allegedly encountered in the UPS Store restroom to form the basis for a Title III ADA claim because the restroom inside the UPS Store is not a place of public accommodation, as it is for employee use only and has never been open to the public or available for use by customers.  *See* Dec. Brian R. Cochrane ¶4 (May 13, 2010) (cited hereinafter as

---

Group.  [Golden Aff., ¶ 5].  In deposition, Plaintiff explained that he does not get manicures or pedicures [Harty Depo. 42:21 – 42:24], that he never does dry cleaning [Harty Depo. 74:23 – 75:9] and he has no plans to change insurance carriers [Harty Depo. 55:11 – 55:13].  Thus, there is no reasonable expectation that Plaintiff would visit these three tenant spaces in the future.

[14] Plaintiff's attempt to include in his Motion a claim related to architectural barriers encountered or observed at the UPS Store restroom, as well as other claims as a result of additional barriers encountered or observed *after* Plaintiff filed his Complaint, is inappropriate and impermissible, as the deadline to amend the pleadings in this case passed on January 25, 2010.

"[Cochrane Dec., ¶__]"), attached hereto as Exhibit 4.  *See Doran v. 7-Eleven, Inc.*, 506 F.3d 1191 (9th Cir. 2007) (explaining that Title III of the ADA only applies to places of public accommodation and an employee only restroom inside a convenience store was not a place of public accommodation, this it was not subject to Title III of the ADA); *see also Olinger v. U.S. Golf Ass'n*, 205 F.3d 1001, 1004 (7th Cir. 2000) (stating, "[p]ursuant to Justice Department regulations implementing Title III, to the extent that a mixed use facility is not open to the general public, it is not subject to the requirements for public accommodations").[15]

To be clear, the UPS Store has a single unisex restroom for employee use only, which is located behind the front store counter.  [Cochrane Dec., ¶ 4]").  The restroom does not have any signage indicating that it is actually a restroom and there is no signage indicating that any bathroom exists for public use within the store.  *Id.*  In fact, it is the UPS Store's policy to advise all customers who inquire about the existence of a public restroom that they are not permitted to use the restroom.  *Id.*  All of the UPS Store's employees are aware of this policy.  *Id.*  Indeed, the only manner in which an individual could gain access to the restroom in the UPS Store would be if he/she went behind the front counter and gained access without authorization.  *Id.* at ¶ 5.[16] This is ostensibly how Plaintiff gained access to the UPS Store restroom.  Because the restroom inside the UPS Store is clearly not a place of public accommodation subject to Title III of the ADA, Plaintiff may not seek redress for ADA violations he alleges exist inside the restroom.

### b. Sal's Italian Restaurant and Pizzeria restroom

Plaintiff's Motion also references a restroom inside Sal's Italian Restaurant and Pizzeria ("Sal's"), a tenant at the Property, and states that there are non-compliant fixtures inside the

---

[15] The Eleventh Circuit and Southern District have adopted this reasoning.  *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237,1241, fn. 5 (11th Cir. 2000) (explaining that Title III of the ADA applies to areas of a cruise ship that are open to the public but Title III of the ADA does not apply to spaces on the cruise ship that are not open to the public; *see also Ass'n for Disabled Am., Inc. v. Concorde Gaming Corp.*, 158 F. Supp. 1353 (S.D. Fla. 2001) (stating, "unenclosed area on the first deck of the [cruise ship] is not a public accommodation subject to Title III").

[16] Though Plaintiff is not barred from visiting the Property, it was surprising to learn that, after being barred from conducting a Rule 34 inspection inside the UPS Store pursuant to Magistrate Judge Turnoff's Order [DE 28], Plaintiff claims to have chosen to visit the UPS Store with a camera in hand, apparently sneak behind the front counter of the UPS Store when not being observed by store employees, take photographs inside of the UPS Store employees' restroom and then forward those photographs to his expert to be incorporated into the expert report attached to the Motion.  *See* [Harty Aff., ¶ 9].  Plaintiff's conduct should not be condoned by the Court, as it is tantamount to an unauthorized and impermissible Rule 34 inspection which was specifically prohibited in Magistrate Judge Turnoff's Order [DE 28].

restroom (including an inaccessible sink, toilet seat cover dispenser and toilet paper dispenser that obstructs access to grab bars) that "remain fixed in place for periods of months or years." Mot., p. 15; [Aff. Baez, ¶ 3(a)]. The Motion further argues that Plaintiff "obviously fails to monitor the [Property] on a daily or weekly basis to ensure ADA compliance" since "[t]rash cans are allowed to be placed by doors and under grab bars to obstruct maneuvering clearances and access to toilets." Mot., p. 15. Plaintiff's arguments are without any factual or legal merit.

The problems with Plaintiff's arguments are numerous. Plaintiff admitted in deposition that he has never been inside Sal's and could not even identify the restroom when shown a photograph of it in deposition. [Harty Depo. 150:24 – 150:25; 153:6 – 153:13]. Clearly, Plaintiff does not have standing to complain about ADA violations inside of Sal's.

The second problem with Plaintiff's argument is that Plaintiff is arguing that the ADA violations inside Sal's restroom existed within the restroom for months or years. This statement by Plaintiff has no merit whatsoever and has no evidentiary support, as Plaintiff has not come forward with a scintilla of evidence that shows when or for how long the fixtures in the restroom were installed.[17] *See Brother*, 317 F. Supp. 2d at 1369 (denying relief for speculative injuries). Moreover, it is unclear how or why Plaintiff would have any knowledge about fixtures inside Sal's restroom when Plaintiff has admittedly never been inside of Sal's and was not even able to identify the restroom during his deposition.

The third problem with Plaintiff's argument is his incorrect assertion that the placement of a movable object (namely, a trash can) can be an ADA violation. It is well settled that a movable object is not an architectural barrier and, therefore, does not fall under the purview of the ADA. *See Ass'n for Disabled Americans, Inc. v. Key Largo Bay Beach, LLC*, 407 F. Supp. 2d 1321, 1343 – 1344 and 1346 (S.D. Fla. 2005) (explaining that it is futile for a court to enter an injunction requiring movable objects, including trash cans, to be moved when they are portable and constantly being moved by customers and employees.); *see also Eiden v. Home Depot USA, Inc.*, 2006 WL 1490418, *12 (E.D. Ca. May 26, 2006) (interpreting ADA regulations to

---

[17] Plaintiff makes a similar statement in his Motion, saying that "the [Property] was defectively designed and constructed when it was built in the year 2000." Mot., p. 10. Again, there is no evidence whatsoever to support this supposition. Defendant's corporate representative, Joanna Golden, made clear in her deposition that Defendant did not purchase the Property until 2006. [Golden Depo. 5:17 – 5:22]. There is nothing in the record that discusses the condition of the Property prior to 2006 and any statements by Plaintiff regarding the condition of the Property prior to 2006 are based on mere speculation.

conclude that an ADA defendant "would not be liable for 'isolated' or 'temporary' movable objects which temporarily restrict access…"); *Pack v. Ark. Valley Corr. Facility*, 894 P.2d 34, 38 (Colo. Ct. App. 1995) (dismissing ADA claim and explaining that isolated instance of negligence regarding failure to remove ice and snow from handicapped parking zone was not an ADA violation because ADA does not address "isolated acts of simple negligence."); *Martinez v. Home Depot USA, Inc.*, 2007 WL 926808, *5 (E.D. Cal. Mar. 27, 2007), *reversed in part on other grounds Martinez v. Home Depot USA, Inc.*, 2008 WL 4833033 (9th Cir. 2008) (stating, "the ADA only applies to 'architectural barriers… not temporary or movable barriers…").

The fourth and final problem with Plaintiff's reference to ADA violations inside Sal's restroom is that, to the extent that it was not ADA compliant at any point in the past, is has been fully remediated and the barriers Plaintiff complained about in his Motion (for the very first time) no longer exist, rendering any claims related to ADA compliant inside the Sal's restroom moot. [Gross Aff., ¶¶ 37 - 44]; *see* mootness argument *infra* at pp. 14 - 15.

### c.  Pathway from bus stops to the Property

Plaintiff's Complaint raised the issue of there being no accessible path from bus stops along the perimeter of the Property directly to the Property.  However, as explained below, Plaintiff still does not have standing to argue that Defendant is required to have a path leading from the bus stop on Military Trail to the Property.  Mot., p. 12.

Plaintiff was clear in his deposition that he has not suffered any injury related to pathways to and from bus stops and he has also made clear that he is not likely to suffer any injury in the future related to such pathways.  Specifically, during Plaintiff's deposition, Plaintiff admitted he has never taken a bus to the Property.  [Harty Depo. 135:4 – 135:6].  Plaintiff even admitted during his deposition that he has not used public transportation since 1997 or 1998.  [Harty Depo. 135:7 – 135:12].  When asked in deposition whether he had any reasonable expectation of using public transportation in the future, Plaintiff was not able to answer affirmatively, stating speculatively that he "never can tell," that "anything can change," he "could have an accident" and that "we can't know about the future."  [Harty Depo. 136:10 – 136: 18].  Such conjecture of future injury is insufficient to confer standing upon a party.  *See Lujan*, 504 U.S. at 560; *see also Whitmore*, 495 U.S. at 155; *South Fla. Stadium*, 161 F. Supp. 2d at 1364 (granting summary judgment for ADA defendant and stating, "[a] plaintiff seeking injunctive relief must additionally allege a 'real and immediate – as opposed to a merely conjectural or hypothetical –

threat of *future* injury'" and "[a]bsent an allegation that he intends to return to the public accommodation, an ADA plaintiff fails to demonstrate this 'irreducible minimum' and thus lacks standing to sue for injunctive relief.") (internal citations omitted); *Brother*, 317 F. Supp. 2d at 1369 (finding that a serial plaintiff did not have standing to bring an ADA suit due to his extensive ADA litigation history and because only conducted a visual inspection of the defendant's property, thus his injury was merely speculative).  Because Plaintiff never suffered, and is unlikely to ever suffer, discrimination due to there being no path from a Military Trail bus stop to the Property, Plaintiff does not have standing to assert claims relating to such paths.[18]

### d.  Location of disabled parking spaces

Plaintiff argues for the first time in his Motion that the location of new disabled parking spaces in the northwest corner of the Property is not ADA compliant.  However, prior to the filing of the Motion, Plaintiff never took issue with or complained of problems concerning the placement of *any* disabled parking spots at the Property.  Assuming, however, that Plaintiff did have standing to now complain about the location of disabled parking spaces, the disabled parking spaces about which Plaintiff is complaining are actually ADA compliant.[19]

Pursuant to ADA Accessibility Guidelines ("ADAAG") section 4.6.2, "[a]ccessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance... In buildings with multiple accessible entrances with adjacent parking, accessible parking spaces shall be dispersed and located closest to the accessible entrances."  As explained below, the new parking spaces installed on the northwest end of the Property comply with this section of ADAAG.

Plaintiff explains in his Motion that the shopping center on the Property is shaped like the letter "L," with the north wing of the shopping center facing 10th Street and the east wing of the shopping center facing Military Trail.  Mot., p. 11.  However, Plaintiff's Motion incorrectly states that the UPS Store is at the "very center" of the Property, though it is located at the corner of the "L."  Mot., p. 11; [Gross Aff., ¶ 48].  The UPS Store is actually located 210 feet from the

---

[18] As discussed below, even assuming that Plaintiff had standing to complain about the lack of a path from the outside perimeter of the Property into the Property, such claim would still be moot because Defendant has installed such a path. *See* mootness argument *infra*, pp. 14, 15, 17 – 19.

[19] Had Plaintiff responded to the interrogatories served by Defendant on April 8, 2010, Defendant may have learned about Plaintiff's issues with the location of the disabled parking spaces prior to the filing of his Motion.  Plaintiff's failure to respond to the interrogatories is the subject of a pending, fully briefed, motion to compel.  [DE 36, 38, 39].

northwest corner of the Property and 400 feet from the southeast corner of the Property. *Id.* at ¶ 49. This places the UPS Store 1/3 of the way from one end of the Property and 2/3 from the other, not in the center of the Property. *Id.* at ¶ 50. Additionally, the east side of the shopping center (making up 2/3 of the shopping center) is serviced by six disabled parking spaces and two ADAAG compliant access ramps (2/3 of the total disabled parking spaces and 2/3 of the access ramps) and the north side of the shopping center (making up 1/3 of the shopping center) is serviced by two disabled parking spaces and one new ADAAG compliant access ramp (1/3 of the total disabled parking spaces and 1/3 of the access ramps).[20] *Id.* at ¶ 56. The disabled parking spaces (and access ramps) are, therefore, evenly dispersed throughout the Property.[21]

Additionally, Plaintiff mischaracterizes the layout of the parking lot, complaining that disabled patrons using the new disabled parking spaces "across the parking lot from the entrances," will have to "cross the parking lot, through potential vehicular traffic and past non-disabled parking spaces which are located by the entrances." Mot., p. 12. In fact, the new disabled parking spaces are ADAAG compliant and are only 44 feet from an ADAAG compliant access ramp on the northwest corner of the Property. *See* [Gross Aff., ¶¶ 26, 55, 62]. A clearly marked access aisle also exists between the two new disabled parking spaces and does not go behind any parked vehicles, but goes directly from the disabled parking spaces through the parking lot[22] to the accessible ramp. *Id.* at ¶ 59. The new disabled parking spaces on the northwest corner of the Property are, therefore, ADA compliant and Plaintiff's complaints about the location of the spaces are moot. *See also* mootness argument *infra* at pp. 14 - 17.

Plaintiff is correct that a disabled patron using the new parking spaces must pass non-disabled parking spaces to get to an accessible ramp. However, as explained below, a disabled patron would only have to pass between (but not behind) two non-disabled parking spaces (in the clearly marked access aisle) to get to the access ramp. [Gross Aff., ¶ 60].

---

[20] Plaintiff has not made any allegations whatsoever in this case regarding problems with the disabled parking spaces or accessibility ramps (or curb cuts) in the portion of the Property facing Military Trail.

[21] Additionally, the Winn-Dixie takes up 78% of the total square footage of the shopping center on the Property (59,562 square feet). [Gross Aff., ¶ 57]. There are twelve (12) remaining tenant spaces on the Property that make up 22% of the Property (16,800 square feet), yet are serviced by 5 of the 8 (or 63%) of the disabled parking spaces. *Id.* at ¶ 58.

[22] Though Plaintiff implies in his Motion that "crossing the parking lot" to go through potential vehicular traffic" is an ADA violation, there is nothing in ADAAG that prevents an accessible

Moreover, the disabled parking spaces on the northwest corner of the Property cannot be positioned immediately adjacent to the sidewalk in front of the shopping center and still be ADA compliant because of the unique characteristics of the terrain at the Property.  *Id.* at ¶ 61. Specifically, the finish floor of the building on the Property is set by the National Flood level established by the Federal Emergency Management Agency ("FEMA").  *Id.*  However, the finish floors for the parking lot and drainage are set by the South Florida Water Management District. *Id.*  Because of these different, inconsistent standards, the spaces adjacent to the sidewalk in front of the shopping center have a steeper slope than the flatter space where the disabled spaces are located.  *Id.*  Pursuant to ADAAG section 4.1.1(5), this is perfectly permissible, as a "person or entity is not required to meet fully the requirements of these [ADAAG] guidelines where that person or entity can demonstrate that it is structurally impracticable to do so.  Full compliance will be considered structurally impracticably only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessible features."   Additionally, ADAAG section 4.6.2 does not require disabled parking spaces to be located at the shortest distance to an accessible entrance, but on the "shortest *accessible* route of travel" to an accessible entrance.  *See Ass'n for Disabled Americans v. Key Largo Bay Beach, LLC*, 407 F. Supp. 2d 1321, 1345 (S.D. Fla. 2005) (rejecting the plaintiffs' argument that a disabled parking space should be located immediately adjacent to a building and also finding severe cross slopes of a parking lot permitted disabled parking spaces to be located 80 feet from property).  Due to the unique characteristics of the terrain at the Property, the new disabled parking spaces on the northwest corner of the Property are located on the shortest and safest accessible route to the building on the Property.  [Gross Aff., ¶ 61].

**B.  Of the architectural barriers Plaintiff claims to have encountered or observed prior to his filing his Complaint and may arguably have standing to assert, Plaintiff's claims should, nonetheless, be denied as moot.**

Plaintiff and his counsel are well aware that the ADA violations claimed in Plaintiff's Complaint, and described in detail in Plaintiff's interrogatory responses, deposition and Affidavit have all been remediated.  Indeed, Plaintiff even admitted as much in his Affidavit.  [Harty Aff., ¶ 9]. Notwithstanding Plaintiff's candid factual admission, Plaintiff's Motion downplays any remedial work undertaken by Defendant to bring the Property into compliance with the ADA,

---

route from crossing a vehicular path.  [Gross Aff., ¶ 59].  In fact, this is permitted pursuant to ADAAG section 4.3.  *Id.*

calling them "narrow quick fixes."   What Plaintiff mischaracterizes as "narrow quick fixes," have, however, completely mooted Plaintiff's ADA claims because those "fixes" have remediated each of the four ADA violation alleged in Plaintiff's Complaint.

"A case is moot when actions subsequent to the commencement of a lawsuit create an environment in which the Court can no longer give meaningful relief." *Brother*, 317 F. Supp. 2d at 1372; *see also  Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208 (11th Cir. 2000); *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (a case is moot "when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief"); *Najjar v. Ashcroft*, 273 F.3d 1330 (11th Cir. 2001); *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001); *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456, 462 (D. Md. 2000) (Title III defendant permanently closed condominium sales center making plaintiff's claim for ADA violations in the sales center moot).   Accordingly, to the extent that the ADA violations complained of in Plaintiff's Complaint have been remediated, those claims are now moot.

Once a claim becomes moot, the court no longer has jurisdiction over the matter and the claim must be dismissed.  *See e.g. Carr v. Saucier*, 582 F.2d 14, 15 - 16 (5th Cir. 1978) (stating, "[i]f a controversy becomes moot at any time during the trial or appellate process, the court involved must dismiss the suit for want of jurisdiction.") (*citing Securities & Exchange Commission v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972)); *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 458 F. Supp. 2d 1359, 1365 (S.D. Fla. 2006) (stating that "[m]ootness is a jurisdictional defect that can be raised at any time by the parties or the court *sua sponte*.") (*citing Barilla v. Ervin*, 886 F.2d 1514, 1519 (9th Cir 1989)).   As described in detail below, Defendant has brought the Property into compliance with the ADA and Plaintiff's ADA claims are now moot and subject to dismissal.

### i.        Winn-Dixie men's restroom

Plaintiff acknowledges in its Motion that the Winn-Dixie men's restroom has been remediated, stating that "Defendant has hastily moved the non-compliant fixtures in an attempt to feign ADA compliance."  Mot., p. 15.  Plaintiff never explains in his Motion why it is that bringing the men's restroom into compliance with the ADA amounts to "an attempt to feign" ADA compliance but Plaintiff's Motion does nevertheless acknowledge Defendant's ADA

compliance in the Winn-Dixie men's restroom.  Accordingly, Plaintiff's ADA claims relating to Winn-Dixie are now moot.[23]  *See also* [Gross Aff., ¶ 18].

ii.      **Curb ramp in front of UPS Store**

Plaintiff still takes issue with the ramp in front of the UPS Store.  Prior to Plaintiff filing his Complaint, in front of the UPS Store there were two disabled parking spaces with the International Symbol of Accessibility ("ISA") painted inside, a disabled parking sign displaying the ISA, and access aisle between the two disabled spaces and a curb ramp.  [Gross Aff., ¶ 21].  Since the filing of the Complaint, however, the disabled spaces were removed, the ISAs in the old spaces were painted over and the disabled parking sign was replaced with a sign that showed the ISA along with an arrow pointing westward.  *Id*.  According to Plaintiff's Motion, the curb ramp (referred to by Plaintiff has a "curb cut") that remains in front of the UPS Store "must be replaced with a new curb [ramp] with a compliant slope."  Mot., p. 12.

Defendant has done just that, replacing the old curb ramp with a new one 132 feet west of the old curb ramp in front of the UPS Store.  [Gross Aff., ¶ 22].  The slope of the new curb ramp is less than 8.333% and complies with ADAAG sections 4.7.2 and 4.8.2.  *Id*.  The new curb ramp was completed prior to Plaintiff's Rule 34 inspection, giving Plaintiff's counsel and expert the opportunity to inspect the new curb ramp and Plaintiff never disputes that the slope of the newly installed curb ramp is fully ADAAG compliant.

Plaintiff also takes issue with the new sign in front of the UPS Store with the ISA and westward pointing arrow.  However, ADAAG section 4.1.2(7)(c), provides that inaccessible entrances "shall have directional signage to indicate the route to the nearest accessible entrance,," making this sign a requirement under ADAAG.  [Gross Aff., ¶ 23].  Plaintiff's Motion even acknowledges Defendant's compliance with this ADAAG requirement, describing in detail the new sign in front of the old, non-compliant curb cut that now has a handicap symbol and directional arrow pointing westward toward the two new disabled parking spaces at the northwest end of the Property.  Mot., p. 11.  Plaintiff's statement that there is not "any signage or warning from above that wheelchair patrons are not to use [the old curb ramp]" is patently false and contrary to the statement made within the same paragraph of the Motion acknowledging the sign.  Mot., p. 11.

---

[23] One wonders why Defendant's voluntary remediation is so objectionable.  Would Plaintiff likewise object to a Court ordered remediation?

Finally, Plaintiff argues that disabled patrons at the Property will be confused because an old access aisle remains where the disabled parking spot used to be located.  Mot., p. 11 – 12. However, the possible confusion of "disabled patrons" generally is mere speculation and is not actionable.  *See Brother*, 317 F. Supp. 2d at 1369.  Moreover, as explained above, there is a sign directly in front of the old access aisle that clearly directs disabled patrons toward the accessible route making confusion highly unlikely and certainly, there is no record evidence before the Court that Plaintiff is confused by the signage.  Regardless, because the old access aisle does not service an accessible entrance, it is no longer considered an "access aisle" under the ADA or ADAAG and, therefore, is no longer governed by the ADA or ADAAG.  [Gross Aff., ¶ 25].

Because Defendant has remediated each and every one of the accessibility issues Plaintiff has described in his Complaint, interrogatory responses, deposition testimony and Motion, Plaintiff's claims relating to those issues are now moot.

### iii.    Quiznos men's restroom

Plaintiff's Motion makes no mention of any ADA violations inside the vacant tenant space formerly occupied by Quiznos.  As Magistrate Judge Turnoff's April 21, 2010 Order [DE 28] made clear, "vacant [tenant] spaces are not open for business [and] they are not places of public accommodation..."  Accordingly, the vacant space formerly occupied by Quiznos is not subject to Title III of the ADA and is, therefore, moot.  *See Doran v. 7-Eleven, Inc.*, 506 F.3d 1191.

### iv.    Accessible route from public sidewalks or bus stops

The final ADA violation Plaintiff alleged in his Complaint is the lack of an accessible route to the Property from the public sidewalk and bus routes surrounding the Property.  [Harty Depo. 163:5 – 163:15].  Plaintiff admits in his Affidavit that this was remediated, explaining that, while visiting the Property in December 2009, he "noticed that [Defendant] installed a concrete path leading from the north end of the [Property] to the sidewalk on 10th Street."  [Harty Aff., ¶ 6]. Plaintiff's expert also acknowledges such remediation, stating in his Affidavit that "Defendant installed a route connecting the far northwest end of the [Property] to the public sidewalk running along SW 10th Street." [Baez Aff., ¶ 10].  Notwithstanding the undisputed fact that this alleged ADA violation has been remediated, Plaintiff still argues in the Motion that Defendant is

in violation of ADAAG requirements because no path exists from the bus stop on Military Trail to the Property.[24]  Mot. p. 12.

An "accessible route" is defined in ADAAG as "[a] continuous unobstructed path connecting all accessible elements and spaces of a building or facility… Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps and lifts." ADAAG section 3.5.  Pursuant to ADAAG section 4.1.2(1), "at least one accessible route… shall be provided within the boundary of [a] site from public transportation stops… and public streets or sidewalks to an accessible building entrance."  Defendant is in compliance with this section of ADAAG.  [Gross Aff., ¶ 35].  The Motion, Plaintiff's Affidavit and Plaintiff's expert's affidavit even acknowledge that there is at least one accessible route from the public streets or sidewalk to the Property – the concrete path from the sidewalk on 10th Street to the north end of the Property.  *See* Mot., p. 12; [Harty Depo., ¶ 6]; [Baez Aff., ¶ 10].  Because the sidewalk surrounding the Property is continuous, this new accessible route can be used by anyone seeking access to the Property whether they are traveling from Military Trail or S.W. 10th Street.  [Gross Aff., ¶ 32].

Plaintiff now argues that a *second* access route is required leading from the bus stop on Military Trail to the Property.  Mot., p. 12.  Plaintiff's Motion does not cite to a single case that would require there to be a second accessible route to the Property, likely because it is contrary to the language found in ADAAG section 4.1.2(a) requiring only one accessible route.  In another case, dealing with a similar issue, *Martinez v. Home Depot USA, Inc.*, 2007 WL 926808,

---

[24] Plaintiff alleges that there is a path from Military Trail to the Property which crosses a landscaped swale owned by Defendant.  Mot., pp. 12 – 13.  Plaintiff argues this path is too steep but it is not intended (or required) to be a handicap accessible route. *See* ADAAG section 4.1.2(2)(a); *see also Martinez*, 2007 WL 926808, *5 (explaining that, where ADAAG required that there be "[a]t least accessible route" that exceeds a certain width, the fact that there are inaccessible routes that do not exceed that width does not violate ADAAG because there are other compliant, accessible routes.).  As the Motion states, this path "serves the parking lot owned separately by the bank."  Mot., p. 13.  This path is actually owned almost entirely by the bank, with Defendant owning only about 1 square foot of the path where it meets Military Trail. [Gross Aff., ¶ 34].  That small portion of the path is ADAAG compliant.  *Id*.  Notably, Title III of the ADA provides that, "[n]o individual shall be discriminated against on the basis of disability… by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. 12182(a).  Because Defendant does not own, lease (or lease to), or operate the ramp, Defendant is not required to bring the path into compliance with the ADA, *See Atakpa v. Perimeter OB-GYN Assoc., P.C.*, 912 F. Supp. 1566, 1574 fn. 5 (N.D. Ga. 1994)

*reversed in part on other grounds Martinez v. Home Depot USA, Inc.*, 2008 WL 4833033 (9th Cir. 2008), an ADA plaintiff argued that more than one accessible route through a Home Depot store should be required because, with there being only one accessible route, the plaintiff was denied full and equal enjoyment of the Home Depot store. *Id*. at 5. The court did not find this argument persuasive despite the plaintiff's argument that disabled individuals may be required "to take different routes and go to extreme lengths… to obtain the same access that is available to the non-disabled patron[s]." *Id*. As the court explained, this alleged injury to the plaintiff was merely "a speculative injury unsupported by the record." *Id*.

### C. Defendant adheres to certain policies and procedures to ensure ADA compliance.

Plaintiff argues in his Motion that Defendant "completely fails to monitor ADA compliance." Mot., p. 14. Plaintiff improperly cites to the deposition of Defendant's corporate representative, Joanna Golden, to support his argument. Not only is Plaintiff's assertion flatly wrong, but he has disingenuously mischaracterized Ms. Golden's deposition testimony to support his argument. Moreover, the only "evidence" that Plaintiff presents to support its conclusion that Defendant fails to monitor its tenant spaces on a daily or weekly basis is that movable objects (trash cans) are allowed to be moved to obstruct accessibility. Mot., p. 15; *see also* [Baez Aff., ¶ 3]; [Harty Aff., ¶ 4].[25] More importantly, however, Plaintiff wrongly implies in his Motion that Defendant has an obligation to conduct daily or weekly inspections of all tenant spaces to check for ADA compliance. Mot., p. 15. The Motion does not cite to a single case that stands for the proposition that a landlord has a duty to conduct daily or even weekly inspections of its tenant spaces to monitor ADA compliance. To be clear, Defendant does not deny that a landlord cannot escape liability under the ADA if its tenants fail to adhere to the ADA, but such liability does not amount to a "duty" to monitor – such potential liability simply provides a landlord with "a strong incentive" to monitor compliance on its property so as to avoid being sued for its tenants' ADA violations. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 834 (9th Cir. 2000). Regardless of

---

("ADA claim …would be dismissed even if plaintiff did have standing to sue for injunctive relief because [defendant] does not own, lease or operate a place of public accommodation.").

[25] As explained above, however, movable objects are not architectural barriers and do not fall under the purview of the ADA. *See Key Largo Bay Beach, LLC*, 407 F. Supp. 2d at 1343 – 1344 and 1346.

Defendant's having no independent legal duty to "monitor" ADA compliance – as opposed to merely comply with the ADA -- at the Property, Defendant has actually monitored compliance.

Defendant purchased the Property in 2006.  [Golden Depo. 5:17 – 5:22].  According to the Motion, when Defendant purchased the Property, it "conducted an engineering survey when it purchased the [Property]… [but] it did not consider ADA compliance."  Mot., p. 14.  Plaintiff cites to Ms. Golden's deposition to support this statement.  This is not what Ms. Golden said in her deposition.  What Ms. Golden actually said was that she believes that an "engineering study was done prior to securing the mortgage [on the Property]" and that "[g]enerally, those types of reports include a paragraph about ADA [compliance], *but I don't remember* specifically on this [P]roperty."  [Golden Depo. 6:17 – 6:18, 7:2 – 7:3] (emphasis added).  This notwithstanding, Defendant has produced evidence of its monitoring ADA compliance at the Property.  In response to a Request for Production, Defendant produced a number of business records including a December 5, 2006 memorandum (the "First Memorandum") and a February 15, 2007 memorandum (the "Second Memorandum") to all tenants from Savitar Realty Advisors as Managing Agent for Defendant (identified by bate stamp numbers 1050 - 1052).  [Golden Aff., ¶¶ 11 - 13].  In the First and Second Memoranda, Defendant reminded all tenants that they were required to adhere to ADAAG requirements and even offered to assist tenants by making ADA compliant fixtures and signage available for purchase directly from Defendant, some at a discounted price.  *Id*. at ¶¶ 12, 13.

In another business record produced in response to the same request (identified by bate stamp number 1057), Defendant lists the results of an independent ADA inspection of the Property ("Internal ADA Report").  *Id*. at ¶¶ 11, 14.  The Internal ADA Report, created in December 2006, describes each tenant's ADA compliance (or lack thereof) and describes what each tenant must do to bring itself into compliance with the ADA.  *Id*. at ¶ 14.  This inspection report also lists further actions that Defendant must take to ensure each tenant's compliance.  *Id*. at ¶ 14.  Plaintiff's statement that "Defendant completely fails to monitor ADA compliance" is clearly without merit.

### III. CONCLUSION

For the foregoing reasons, Defendant, SRA/Palm Trails Plaza, LLC, respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment.

I HEREBY CERTIFY that on this 28th day of May 2010, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Thomas B. Bacon, Esq. via transmission of a Notice of Electronic Filing generated by CM/ECF.

REIMER & ROSENTHAL LLP
Weston Professional Centre
2115 N Commerce Parkway
Weston, FL 33326
Telephone (954) 384-9200
Facsimile (954) 384-0017

By: /s/Alex P. Rosenthal
    Alex P. Rosenthal, Esq.
    Fla. Bar No. 815160
    alex@rrcounsel.com
    Jennifer Gross, Esq.
    Fla. Bar No. 683574
    jennifer@rrcounsel.com